UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRANDON BEAVERS, et al.,                                               Plaintiffs,

v.                                              Civil Action No. 3:14-cv-539-DJH

RILEY BUILT, INC. and WILLIAM S.
RILEY,                                             Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiffs Brandon Beavers, Beavers Hoof Care Services, LLC; and Extreme Chute Company, LLC seek a declaratory judgment of non-infringement against Defendants Riley Built, Inc. and William S. Riley. (Docket No. 13) They further assert non-infringement due to patent misuse and inequitable conduct, as well as state-law claims of defamation and tortious interference with a prospective business advantage. (*Id.*) Defendants have moved for dismissal of all claims, primarily on the ground that the Court lacks subject matter jurisdiction. (D.N. 14) The Court agrees that Plaintiffs have not presented an actual controversy with respect to the patent in question and will therefore dismiss those claims. However, the Court will allow amendment of the complaint to correct jurisdictional allegations in support of Plaintiffs' state-law claims.

I.     BACKGROUND

Defendant Riley Built, Inc. manufactures and sells chutes that facilitate the trimming of cattle hooves. Defendant William S. Riley owns U.S. Patent No. 5,669,332 ("the '332 Patent") for a "Portable Chute for Immobilizing an Animal." Plaintiff Brandon Beavers bought chutes from Riley on three occasions in 2011 and 2012. Riley later learned through social media that Beavers had modified those chutes and was manufacturing chutes similar to Riley's. He hired

1

counsel and a private investigator to determine whether Beavers was infringing the '332 Patent. On February 25, 2014, Riley's counsel sent a cease-and-desist letter to Beavers Hoof Care and Mid State Hoof Trimming, a company owned by Extreme Chute sales and marketing manager John Cordrey. The letter asserted that the chutes being manufactured and sold by Beavers and Cordrey were "mere knockoff[s]" of Riley's, "so similar that they appear to violate each and every claim under [the '332 Patent]." (D.N. 1-3, PageID # 48) The letter further warned that Beavers and Cordrey's modifications to the chutes "either were considered by Mr. Riley or . . . are subject to pending patents and likewise protected." (*Id.*)

Plaintiffs filed this action on July 28, 2014, and amended their complaint approximately one year later. (D.N. 1, 13) In addition to a declaratory judgment of non-infringement, they seek damages for defamation and tortious interference with a prospective business advantage. (D.N. 13) The latter claims arise from allegedly defamatory statements Riley made about Beavers and Cordrey on Facebook and communications Defendants allegedly had with Plaintiffs' potential customers telling them not to purchase chutes from Plaintiffs. (*See id.*, PageID # 194-96, 199-200)

On October 1, 2014, Riley executed a covenant not to sue with respect to the '332 Patent. (*See* D.N. 14-2, PageID # 228) According to Defendants, Riley's covenant not to sue eliminates any controversy between the parties concerning the '332 Patent, thereby divesting the Court of subject matter jurisdiction. Plaintiffs, however, maintain that the covenant is insufficient to extinguish the parties' controversy. The Court concludes that no live controversy remains with respect to the '332 Patent and will therefore grant the motion to dismiss as to those claims. And because the amended complaint does not adequately allege diversity jurisdiction, the state-law claims will be dismissed as well, with leave to amend if Plaintiffs so desire.

## II. ANALYSIS

### A. Declaratory Judgment

The Court may issue a declaratory judgment only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). To determine whether an actual controversy exists for purposes of the Declaratory Judgment Act, the Court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[1] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A defendant who claims to have rendered a case moot by voluntarily ending his wrongful conduct—for example, by executing a covenant not to sue—bears the burden of showing that "the allegedly wrongful behavior [cannot] reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (explaining voluntary cessation doctrine). Thus, in this case, Riley must show that he "could not reasonably be expected to resume [his] enforcement efforts against" Plaintiffs. *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

The covenant executed by Riley states:

> [William S.] Riley is the sole inventor and owner of U.S. Patent No. 5,669,332 entitled "Portable Chute for Immobilizing an Animal" issued on September 23, 1997. Riley covenants not to assert any claim of patent infringement against Brandon Beavers, Beavers Hoof Care Services, LLC and/or Extreme Chute Company, LLC under U.S. Patent No. 5,669,332, as this patent presently reads, with respect to any product currently advertised, manufactured, marketed, used, offered for sale, sold or imported by Brandon Beavers, Beavers Hoof Care Services, LLC and/or Extreme Chute Company, LLC, or any product which was advertised, manufactured, marketed, used, offered for sale, sold or imported by Brandon Beavers, Beavers Hoof Care Services, LLC and/or Extreme Chute Company, LLC prior to [the] date of this covenant.

---

[1] In *MedImmune*, the Supreme Court rejected the "reasonable apprehension" test cited by Plaintiffs. *Ritz Camera & Image, LLC v. Sandisk Corp.*, 700 F.3d 503, 508 n.1 (Fed. Cir. 2012).

3

(D.N. 14-2, PageID # 229) According to Plaintiffs, this covenant is inadequate to moot their controversy with Defendants. They identify four supposed defects in the covenant: (1) it does not bind Riley Built; (2) it is silent regarding modifications to Riley Built chutes; (3) it does not protect Plaintiffs' manufacturers, distributors, or customers; and (4) it does not address pending patents. (D.N. 15, PageID # 239-41) None of these supposed flaws is fatal, however.

First, although the covenant binds only Riley, no one else could sue for infringement of the '332 Patent—only "a patentee or successor in title to the patentee may bring an action for patent infringement."[2] *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) (citing *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001)). The omission of Riley Built is of no consequence because adding Riley Built to the covenant would give Plaintiffs no additional protection.

The fact that the covenant does not address modifications to the chutes is likewise immaterial. The parties agree that the patent exhaustion doctrine precludes an infringement claim pertaining to "postsale use" of a patented item. *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008). In any event, as Defendants point out, the covenant applies to "any product that has been or [is] currently advertised, manufactured, marketed, used, offered for sale, sold or imported by Plaintiffs, which would encompass any modifications made by Plaintiffs prior to the date of the covenant." (D.N. 16, PageID # 277; *see* D.N. 14-2, PageID # 229)

As to the covenant's omission of manufacturers, distributors, and customers, Plaintiffs' objection is meritless because none of those individuals or entities is a party to this case, nor do Plaintiffs contend that any of them would be subject to liability if Plaintiffs were found liable for

---

[2] Plaintiffs assert, without citation, that an individual named Mark Larson may own some rights to the '332 Patent. (D.N. 15, PageID # 239) Even if this were true, it has no bearing on whether the covenant resolves the controversy between the parties to this lawsuit.

4

infringement. The possibility that Riley could assert a claim against a manufacturer, distributor, or customer is therefore "irrelevant to whether a controversy exists between" Plaintiffs and Defendants in this case. *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1350 (Fed. Cir. 2010) (finding that covenant not to sue extinguished controversy between plaintiff and defendant despite its failure to include defendant's parent company and other "affiliates"). To the extent Plaintiffs allege improper interference with their customers or business partners, their remedy lies in tort, not in a declaratory judgment of non-infringement. *Cf. Already*, 133 S. Ct. at 730 ("[E]ven if Nike were engaging in harassment or unfair trade practices, Already has not explained how invalidating Nike's trademark would do anything to stop it.").

Finally, the covenant need not mention pending patents because—as Plaintiffs themselves observe—a pending patent cannot form the basis of an infringement claim. *See Brown v. Toscano*, 254 F.R.D. 690, 697 (S.D. Fla. 2008) (citing *GAF Bldg. Materials Corp. v. Robert Bosch Tools Corp.*, 90 F.3d 479, 482 (Fed. Cir. 1996); *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965, 970 (N.D. Ill. 2005)). A threat of litigation regarding a patent not yet issued presents no justiciable case or controversy that would support the Court's exercise of jurisdiction in this matter. *See id.*

In sum, none of the "deficiencies" identified by Plaintiffs is substantial. The covenant executed by Riley covers any product "advertised, manufactured, marketed, used, offered for sale, sold or imported" by Plaintiffs currently or prior to the date of the covenant. (D.N. 14-2, PageID # 229) It protects all three of the plaintiffs in this case. (*See id.*) The Court thus concludes that no live controversy remains between Plaintiffs and Defendants with regard to the '332 Patent.

This conclusion is not inconsistent with *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013), upon which Plaintiffs rely. In that case, Nike sued Already for trademark infringement and dilution based on certain shoe designs. *Id.* at 725. Already counterclaimed, alleging that Nike's trademark was invalid. *Id.* Eight months into the lawsuit, Nike issued a covenant not to sue. *Id.* The Court found that Nike's covenant "suffice[d] to meet the burden imposed by the voluntary cessation test." *Id.* at 728. The covenant was "unconditional and irrevocable," "prohibit[ed] Nike from making any claim *or* any demand," "reach[ed] beyond Already to protect Already's distributors and customers," and "cover[ed] not just current or previous designs, but any colorable imitations." *Id.* Based on the "broad language" of the covenant and Already's failure to assert any "concrete plans to engage in conduct" the covenant did not address, the Court determined that "the challenged conduct [could] []not reasonably be expected to recur" and that the case was therefore moot. *Id.* at 729.

Contrary to Plaintiffs' assertion, nothing in *Already* indicates that the Supreme Court meant to establish a rigid four-part test for covenants not to sue. (*See* D.N. 15, PageID # 239 (asserting that *Already* "[e]ssentially" states that "an acceptable covenant not to sue must be (1) unconditional and irrevocable, (2) must prevent the movant from making any other related claims or demands, (3) must reach beyond the opponent to protect others including distributors and customers, and (4) must cover current and previous designs as well as colorable imitations")) Indeed, the *Already* Court seemed skeptical that a plaintiff could assert an invalidity claim based on threatened action against its retailers but noted that Nike's covenant covered that scenario in any event. 133 S. Ct. at 730 ("Even if a plaintiff may bring an invalidity claim based on a reasonable expectation that a trademark holder will take action against the plaintiff's retailers, the covenant here extends protection to Already's distributors and customers."). The fact that

6

Riley's covenant does not contain all the provisions that were present in *Already* does not make it inadequate. Plaintiffs have not identified any actions they plan to take that would be unprotected by the covenant. *Cf. Already*, 133 S. Ct. at 728-29. The Court therefore finds that Riley's enforcement actions against Plaintiffs "cannot reasonably be expected to recur." *Id.* at 729.

B.  State-Law Claims

Defendants argue that dismissal of the federal claims automatically requires that the state-law claims be dismissed, as the Court will no longer have supplemental jurisdiction.[3] (D.N. 14-1, PageID # 211-12) Plaintiffs acknowledge that supplemental jurisdiction cannot survive but point out that the amended complaint also alleged diversity jurisdiction. (*See* D.N. 15, PageID # 242-43) Thus, Plaintiffs contend, the Court may exercise diversity jurisdiction over their state-law claims notwithstanding the absence of supplemental jurisdiction. (*Id.*, PageID # 243)

The allegations of the amended complaint do not establish diversity jurisdiction, however. According to the amended complaint, Plaintiffs Beavers Hoof Care Services and Extreme Chute Company are limited liability companies "organized under the laws of the Commonwealth of Kentucky, with [their] princip[al] place of business at 1415 Toad Mattingly Road, Lebanon, KY 40033." (D.N. 13, PageID # 190 ¶¶ 2-3) The amended complaint further alleges that Plaintiff Brandon Beavers is a resident of Lebanon, Kentucky; Defendant Riley Built is a Texas corporation with its headquarters in Lubbock, Texas; and Defendant Riley resides in

---

[3] Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over claims "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The statute further provides that a court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). The Sixth Circuit has instructed that "generally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

Sulphur Springs, Texas. (*Id.*, PageID # 189-90 ¶¶ 1, 4-5) Paragraph 9 asserts that "[t]his Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because plaintiffs and defendants are citizens of different U.S. States and the amount in controversy exceeds $75,000 excluding interest and costs." (*Id.*, PageID # 191 ¶ 9) There are at least two flaws in this assertion.

First, the amended complaint does not properly allege the citizenship of the two limited liability company plaintiffs, Beavers Hoof Care Services and Extreme Chute Company. An LLC's citizenship is not determined by the company's state of organization and principal place of business, but rather by "the citizenship of each of its members." *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 494 (6th Cir. 2015) (quoting *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009)). Thus, without knowing the citizenship of the members (and any sub-members) of Beavers Hoof Care Services and Extreme Chute Company, the Court cannot find that diversity exists. *See Delay*, 585 F.3d at 1005 ("When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company. And because a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well." (citing *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006))).

Plaintiffs' allegations concerning Beavers and Riley are also deficient. Residence does not equal citizenship for diversity purposes. *Deasy v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002) (citing *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)). Rather, to be a citizen of a state, an individual must be domiciled there. *Id.* By merely alleging where Beavers and Riley reside, Plaintiffs have failed to provide enough information for the Court to determine whether the parties are completely diverse. *See id.*

Plaintiffs are entitled to amend their complaint to correct these deficiencies. *See Varsity Brands*, 799 F.3d at 494 (where plaintiff's complaint did not adequately allege citizenship of LLC defendant, allowing plaintiff "to seek leave to amend the complaint . . . to attempt to establish that all members of [the defendant] do not share citizenship with the three plaintiff corporations" was "the proper course" (citing *Kelly v. Ky. Oak Mining Co.*, 491 F.2d 318, 320 (6th Cir. 1974))). The Court will therefore grant leave to amend for the limited purpose of clarifying the citizenship of Plaintiffs and Defendant Riley.

### III. CONCLUSION

Because there is no actual controversy underlying Plaintiffs' non-infringement claims, the Court lacks jurisdiction to issue a declaratory judgment in this matter. Furthermore, the amended complaint does not adequately allege diversity jurisdiction over Plaintiffs' state-law claims. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendants' Motion to Dismiss (D.N. 14) is **GRANTED**. This action is **DISMISSED** without prejudice.

(2) Plaintiffs shall have **thirty (30) days** from the date of entry of this Memorandum Opinion and Order within which to file a motion for leave to amend their complaint to reassert Counts III and IV and address the deficiencies discussed in part II.B above. No other amendments will be permitted.

March 10, 2016

David J. Hale, Judge
United States District Court