UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRANDON BEAVERS, et al.,                                                      Plaintiffs,

v.                                                                                Civil Action No. 3:14-cv-539-DJH

RILEY BUILT, INC., et al.,                                                    Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of a dispute between business competitors. Plaintiffs Brandon Beavers; Beavers Hoof Care Services, LLC; and Extreme Chute Company, LLC sued Defendants Riley Built, Inc. and William S. Riley, alleging defamation and tortious interference with a prospective business advantage. (Docket No. 20) Defendants have moved to dismiss the claims, asserting lack of personal jurisdiction and failure to state a claim upon which relief may be granted. (D.N. 23) The Court finds that it has personal jurisdiction over Defendants, but only as to one of Plaintiffs' claims. However, the Court will dismiss that claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.      Background

Defendant William S. Riley owns U.S. Patent No. 5,669,332 (the '332 Patent) for a "Portable Chute for Immobilizing an Animal," which describes a chute for immobilizing cattle for the purpose of trimming their hooves. (D.N. 20, PageID # 328) Riley founded Defendant Riley Built, Inc. to manufacture and sell these chutes. (*Id.*, PageID # 329) Plaintiff Brandon Beavers bought chutes from Riley on three occasions in 2011 and 2012. (D.N. 23-1, PageID # 355) Beavers is the sole owner of Beavers Hoof Care Services, LLC and Extreme Chute Company, LLC. (D.N. 20, PageID # 326) Riley later learned through social media that Beavers had modified the chutes and was manufacturing chutes similar to Riley's. (D.N. 23-1, PageID #

1

356)  He hired counsel and a private investigator to determine whether Beavers was infringing the '332 Patent.  (*Id.*)  At the conclusion of the investigation, Riley's counsel sent a cease-and-desist letter to Beavers Hoof Care and Mid State Hoof Trimming, a company owned by Extreme Chute sales and marketing manager John Cordrey.  (D.N. 17, PageID # 286)

Plaintiffs allege that subsequent to this letter, Defendants engaged in several acts that amount to defamation and tortious interference with a prospective business advantage.  (D.N. 20, PageID # 335–36)  In February 2014, Beavers and Cordrey began receiving phone calls from a man accusing them of infringing the '332 Patent.  (*Id.*, PageID # 331)  Plaintiffs assert that the calls were from Riley's private investigator.  (D.N. 24, PageID # 376)  Around the same time, Beavers learned that Riley had posted the cease-and-desist letter on Riley Built's Facebook page, as well as on the Facebook pages of Mid State Hoof Trimming and Beavers Hoof Care.  (D.N. 20, PageID # 330)  Riley also posted a second letter to his page stating that Beavers and Cordrey were infringing his patent.  (*Id.*)

Plaintiffs further allege that in May 2014, Riley created a fake Facebook page under the name of "John Courdrey" and claimed to be a hoof trimmer from Eau Claire, Wisconsin.  (*Id.*, PageID # 331)  Riley, via this fake page, posted comments on the Facebook pages of Mid State Hoof Trimming and Extreme Chute Company that alluded to the alleged infringement by Beavers and Cordrey.  (*Id.*, PageID # 331–32)  The complaint also states that Mark Larson, a co-owner of Riley Built, visited Oak Ridge Welding, a fabrication shop in Cadiz, Kentucky, that was making components of Beavers's chutes.  (*Id.*, PageID # 332)  While there, Larson told the employees of the shop that Beavers and Cordrey were infringing the '332 Patent and that they should stop building Beavers's chutes or they would be sued.  (*Id.*)  Plaintiffs also allege that potential purchasers declined to buy chutes after being contacted by Riley and Larson, who had

2

informed them that the chutes infringed Riley's patent and harmed animals and that the potential purchasers might be sued for infringement. (*Id.*, PageID # 333)

Plaintiffs filed this action seeking declaratory judgment of non-infringement against Defendants. (D.N. 13) Plaintiffs further alleged state-law claims of defamation and tortious interference with a prospective business advantage. (*Id.*) Defendants moved for dismissal of all claims, primarily on the ground that the Court lacked subject-matter jurisdiction. (D.N. 14) The Court dismissed the patent claims but allowed amendment of the complaint to correct jurisdictional allegations in support of Plaintiffs' state-law claims. (D.N. 17) Plaintiffs filed a Second Amended Complaint reasserting their previous claims of defamation and tortious interference. (D.N. 20)

Defendants now move to dismiss these claims, asserting lack of personal jurisdiction and failure to state a claim upon which relief may be granted. (D.N. 23) The Court finds that Plaintiffs have failed to establish that this Court has personal jurisdiction over Defendants under Kentucky's long-arm statute as to the majority of their claims. Accordingly, the Court will dismiss those claims without prejudice. The Court further finds that as to the remaining claim, Plaintiffs have failed to state a claim upon which relief may be granted. The Court will therefore dismiss this claim with prejudice.

## II. Personal Jurisdiction

The burden is on Plaintiffs to show that personal jurisdiction exists as to each defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When the Court resolves a Rule 12(b)(2) motion solely on written submissions, a plaintiff's burden is "relatively slight," and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016)

(quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459). Here, Plaintiffs have not requested jurisdictional discovery; nor are there factual disputes necessitating an evidentiary hearing. The Court will therefore resolve the motion on the parties' written submissions.

"A federal court sitting in diversity may exercise jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). Because this is a diversity action, the Court applies Kentucky law to determine whether it has personal jurisdiction over Defendants. *See id.* Under Kentucky law, the Court must first look to Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the statutory requirements are met, the Court must then apply the constitutional due process test "to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.* *Caesars* clarified that "Kentucky's long-arm statute is narrower in scope than the federal due process clause." *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 55–57).

**A. Kentucky Long-Arm Statute**

The Kentucky long-arm statute provides, in relevant part:

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by agent, as to a claim arising from the person's: . . .

4

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth; [or]

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

Ky. Rev. Stat. § 454.210(2)(a). For purposes of the statute, the term "person" includes nonresident commercial entities. § 454.210(1).

Plaintiffs assert that the Court may exercise personal jurisdiction over Defendants because they "(1) contracted to supply goods in the Commonwealth and this cause of action arises from the sale of those goods; (2) caused tortious injury by an act in the Commonwealth; and (3) caused a tortious injury in the Commonwealth by an act outside the Commonwealth." (D.N. 24, PageID # 380) Thus, the case implicates subsections (2), (3), and (4) of the long-arm statute.

### 1. Contracting to Supply Services or Goods

There is little case law interpreting the meaning of section (2)(a)(2)'s "contracting to supply services or goods" language following *Caesars*. The Kentucky Supreme Court has held, however, that "[a] plain reading of [§ 454.210(2)(a)(2)] produces the interpretation that the contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011).

The parties in *Hinners* entered into a contract to purchase a vehicle through the internet auction website eBay. *Id*. at 893. The Kentucky Supreme Court concluded that because "it was anticipated by the parties from the outset that the vehicle would be transported to and used in

5

Kentucky," section (2)(a)(2) of the long-arm statute authorized adjudication. *Id*. at 896. In *Dierig v. Lees Leisure Industries, Ltd.*, the Eastern District of Kentucky ruled similarly. There, the court found that because the parties intended that the product at issue would be transported back to the plaintiff's resident state of Kentucky, the court had personal jurisdiction over the defendant. No. 11–125–DLB–JGW, 2012 WL 669968, at *8 (E.D. Ky. Feb. 28, 2012).

Plaintiffs argue that § 454.210(2)(a)(2) is satisfied here because Defendants sold them three chutes, the first of which was delivered to Beavers in Kentucky by Riley Built's agent. (D.N. 24, PageID # 380) Defendants attempt to distinguish *Hinners* and *Dierig*, arguing that "although the chute that was sold to Beavers may have ultimately been operated in Kentucky, it was not required to be operated in Kentucky." (D.N. 23-1, PageID # 359) The Court agrees with Plaintiffs. The question is not whether the product is "required" to be operated in Kentucky, but rather whether the parties intended the product "to be transported into, consumed or used in Kentucky." *Hinners*, 336 S.W.3d at 896. The Court finds that Plaintiffs have adequately shown that the parties intended the product to be used in Kentucky.[1] Moreover, given the fact that Defendants delivered one of the chutes to Kentucky, the "transported into" prong is likewise satisfied.

Section 454.210(2)(a)(2) also requires that Plaintiffs' claims "arise from" the jurisdictional predicate (i.e., the contracting to supply goods). *Caesars*, 336 S.W.3d at 57. The Kentucky Supreme Court has interpreted "arising from" to mean that "the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that

---

[1] The Court notes that Plaintiffs fail to mention Defendants' sales to Beavers in their Second Amended Complaint. (*See* D.N. 20) However, the Court may consider the pleadings, affidavits, and other "written submissions" when considering a motion to dismiss for lack of personal jurisdiction, *see Turpin v. Cal-Ark Trucking, Inc.*, No. 5:07CV–76–R, 2007 WL 3306072, at *4 (W.D. Ky. Nov. 6, 2007), and Defendants do not contest this fact in any event. (D.N. 23-1, PageID # 355)

6

form the applicable statutory predicate for assertion of long-arm jurisdiction." *Id*. at 58–59. In other words, "the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id*. at 59. There must be "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Id*.

In *Caesars*, a Kentucky resident sued an out-of-state casino for injuries sustained when she slipped on the floor while waiting in line for the casino's buffet. *Id*. at 52. At issue was whether the court had jurisdiction over the out-of-state casino pursuant to Kentucky's long-arm statute. The court first found that the casino had "transacted business" based on its marketing activities in Kentucky. *Id*. at 57–58. The court concluded, however, that it did not have personal jurisdiction over the casino because the plaintiff's alleged injury did not "arise from" those marketing activities:

> [The plaintiff's] presence at the Indiana Casino did not cause her injury. Her claim arises from the butter negligently left on the floor. That [the plaintiff] might have not have been on the casino boat premises that day *but for* the allure of [the casino's] promotional activities in Kentucky does not alter that fact.

*Id*. at 59. In other words, "[the] link between [the casino's] activities in Kentucky and [the plaintiff's] slip and fall [was] far too attenuated to fit within the definition of 'arising from.'" *Id*.

Here, the link between Defendants' business activities in Kentucky and the alleged torts is likewise too attenuated to satisfy the "arising from" requirement. Plaintiffs' arguments to the contrary conflate the distinction *Caesars* made between "arising from" and "but for." Plaintiffs argue that their claims arise from Defendants' activities in Kentucky because

> [w]ithout the sale of the Riley chute to Beavers, Beavers would not have built a competing chute that led to Defendants calling Beavers et al. thieves and infringers, no contact with Plaintiffs' potential customers to tell them not to purchase Beavers Chutes, and no visit to Beaver[s]'s fabricator to tell them not to make the Beaver[s] Chute.

7

(D.N. 24, PageID # 383)

Thus, Plaintiffs essentially argue that but for Defendants' sales to Beavers, the alleged tortious acts would never have occurred. *Caesars* made clear that "but for" is not the test, however. 336 S.W.3d at 59. Instead, Plaintiffs must show a "reasonable and direct nexus" between Defendants' sales and the alleged tortious acts. *Id*. Plaintiffs have failed to satisfy this test. The Court finds that, as in *Caesars*, the link between Defendants' sales and the alleged tortious acts is too attenuated to fit within the definition of "arising from." Between the sales and the alleged tortious acts, several events occurred: (1) Plaintiffs modified the chutes; (2) Plaintiffs began manufacturing and selling their own chutes; (3) Defendants learned about the potential infringement through social media; and (4) Defendants sent a cease-and-desist letter to Plaintiffs. In light of these intervening events, the alleged tortious acts are simply too loosely connected to Defendants' initial contact with Kentucky. To find in Plaintiffs' favor would significantly broaden the definition of "arising from" and return it to a pre-*Caesars* "but for" test.

Nor does the Court's recent decision in *Olbers v. Thompson*, No. 3:16-cv-521-DJH, 2017 WL 3671328 (W.D. Ky. Aug. 25, 2017), support Plaintiffs' position. The plaintiff in *Olbers* brought a personal-injury action against the defendants for injuries sustained from an allegedly defective motorcycle seat. *Id*. at *1. At issue was whether the Court could exercise jurisdiction over the out-of-state defendants. The Court found that it could exercise jurisdiction pursuant to § 454.210(2)(a)(2). A key reason for this finding was that the plaintiff had "demonstrated a 'reasonable and direct nexus' between her injuries and the allegedly defective seat." *Id*. at *4 (quoting *Caesars*, 336 S.W.3d at 57).

The situation presented here is distinguishable. In *Olbers*, the plaintiff's injuries stemmed directly from her use of an allegedly defective product sold to a Kentucky resident for

8

use in Kentucky. In other words, there was a direct nexus between the statutory predicate (i.e., the contracting to supply a motorcycle seat to a Kentucky resident) and the injuries sustained. In contrast, Plaintiffs' injuries here do not stem directly from their use of Riley's chutes. Rather, their injuries are the result of actions that are far attenuated from the initial sale and use of Riley's chutes. *Olbers* is therefore distinguishable. The Court concludes that it does not have jurisdiction over Defendants pursuant to § 454.210(2)(a)(2).

### 2. Causing Tortious Injury by an Act in Kentucky

In order to establish personal jurisdiction under § 454.210(2)(a)(3), Plaintiffs must show that Defendants caused a tortious injury by an act in Kentucky and that their claims "arise from" that act. *Caesars*, 336 S.W.3d at 57. Plaintiffs admit that Defendants' only "act in Kentucky" was Mark Larson's visit to Cadiz, Kentucky, to visit Oak Ridge Welding. (D.N. 24, PageID # 384) Plaintiffs assert that while there, "Defendant's agent, Mark Larson, told the owner and employees that the Beavers Chute infringes Riley's patent, that they should stop making the New Chute and should instead make the Riley chute or 'face a law suit.'" (*Id.*) Plaintiffs further assert that while there, Larson called Beavers a thief for stealing Riley's intellectual property. (*Id.*)

Because § 454.210(2)(a) provides jurisdiction for acts conducted "by agent," the Court finds that § 454.210(2)(a)(3) is satisfied. Plaintiffs have alleged that Defendants, acting through their agent Mark Larson, committed an act of defamation in Kentucky. Furthermore, there is a "reasonable and direct nexus" between Plaintiffs' defamation claim and Larson's acts. *Caesars*, 336 S.W.3d at 59. Ultimately, however, the Court will dismiss the claim arising from Larson's acts for failure to state a claim upon which relief may be granted.

### 3. Causing Tortious Injury in Kentucky by an Act Outside Kentucky

Section 454.210(2)(a)(4) provides personal jurisdiction over a person who causes tortious injury in Kentucky by an act or omission outside Kentucky if (i) he regularly does or solicits business, engages in persistent conduct, or derives substantial revenue from goods used or consumed or services rendered in Kentucky and (ii) the tortious injury arises out of the doing or soliciting of business, persistent course of conduct, or derivation of substantial revenue.

Plaintiffs argue that § 454.210(2)(a)(4) is satisfied here because "Riley and Riley Built have a number of other contacts with the state of Kentucky, and all are related to the defamatory statements and Defendants' attempts to prevent Plaintiffs from selling competing chutes, which underlie Plaintiffs' claims." (D.N. 24, PageID # 386) Aside from arguing why the constitutional due process test is met, however, Plaintiffs do very little to show how the specific elements of section (2)(a)(4) are satisfied. Indeed, in their section dedicated to section (2)(a)(4), Plaintiffs do not establish that Defendants either regularly conduct business in Kentucky or derive substantial revenue from goods sold in Kentucky. (*See id*., PageID # 384–87) Plaintiffs merely cite the fact that "Riley Built has sold at least four hoof trimming chutes into [Kentucky]" between 2011 and 2017. (D.N. 24, PageID # 386) Four isolated sales over a six-year period, however, do not qualify as "regular business," especially since that term implies a *substantial* connection with Kentucky.[2] *See Pierce v. Serafin*, 787 S.W.2d 705, 707 (Ky. Ct. App. 1990) ("Thus Kentucky

---

[2] Plaintiffs also state that Defendants' Kentucky sales totaled revenue of over $100,000, thereby satisfying the "substantial revenue" prong. (D.N. 24, PageID # 380–81, 387) Given the dearth of caselaw concerning that prong, the Court cannot confidently conclude that $100,000 is "substantial." For the Court to determine whether $100,000 is "substantial," it would need to assess that $100,000 against Riley Built's yearly total revenue over the six-year period in question. If, for example, Riley Built achieved millions in revenue over that six-year period, the $100,000 derived from Kentucky sales would not be significant. Plaintiffs provide no information to assist the Court in making this determination and therefore have not established that Riley Built's Kentucky sales resulted in "substantial revenue."

has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has *other substantial connection* to the Commonwealth." (emphasis added)). In sum, Plaintiffs have not satisfied their burden to show a substantial connection between Defendants' business activities and Kentucky. *See Kroger v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006) ("[A plaintiff must] set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss.").[3]

Furthermore, even if Plaintiffs could show that Defendants conduct regular business in Kentucky or derive substantial revenue from goods sold in Kentucky, § 454.210(2)(a)(4) requires more. For the same reasons discussed above, Plaintiffs' alleged injuries do not "arise out of" Defendants' conducting of business or derivation of substantial revenue. *See supra* Part II.A.1. Section 454.210(a)(4) therefore cannot serve as a basis for personal jurisdiction over Defendants.

**B. Constitutional Due Process**

Because the Court finds that the majority of the acts alleged in Plaintiffs' complaint cannot serve as jurisdictional predicates under Kentucky's long-arm statute, the Court need not conduct the traditional due process test as to those acts. Yet because the Court finds it has jurisdiction under Kentucky's long-arm statute as to the defamation claim arising from Mark Larson's visit to Oak Ridge, a brief constitutional analysis is required as to that claim.

---

[3] The Court's recent decision in *Olbers* is distinguishable on this point as well. In finding that it could exercise jurisdiction over the out-of-state defendants in *Olbers*, the Court noted that the defendants had "made eighty-two sales to Kentucky residents over nearly fourteen years." 2017 WL 3671328, at *6. In this case, Defendants are alleged to have sold four chutes over a six-year period. This small number of sales does not "indicate that [Defendants] welcome[] the business of Kentucky residents on a fairly regular basis." *Id*. Moreover, the *Olbers* defendants' eighty-two sales did not serve as the statutory predicate for jurisdiction. Instead, the Court cited the sales as evidence that the defendants "purposefully availed themselves of the privilege of doing business in Kentucky," as required by the traditional due process test. Here, Plaintiffs have not satisfied § 454.210(2)(a)(4)'s requirements, and thus the due process analysis conducted in *Olbers* is inapplicable.

To satisfy the traditional due process test, Plaintiffs must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the exercise of jurisdiction over [Defendants] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Due process limits the Court's exercise of both general and specific personal jurisdiction. General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit," whereas specific jurisdiction is based on a connection "between the forum and the underlying controversy." *Walden v. Fiore*, 134 S. Ct. 1115, 1120 n.6 (2014).

The paradigm forums for the exercise of general jurisdiction over a corporation are those places where the corporation is incorporated and where it maintains its principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Riley Built is incorporated in Texas and has its principal place of business in Texas. (D.N. 20, PageID # 326) It has no offices or employees in Kentucky, and Plaintiffs have presented no evidence demonstrating that Riley Built's connections with Kentucky are so "continuous and systematic" as to render it "at home" here. *See Daimler AG*, 134 S. Ct. at 760–61. Plaintiffs have likewise failed to present evidence demonstrating that Riley's connections with Kentucky are "continuous and systematic." Thus, the Court cannot exercise general jurisdiction over Defendants.

For the Court to exercise specific jurisdiction consistent with due process, "[Defendants'] suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121–22. The Sixth Circuit applies a three-part test to determine whether a court's exercise of specific jurisdiction is consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of

action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

"For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002) (citing *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)); *see also Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp. 2d 726, 735 (E.D. Tenn. 2009) ("Under certain circumstances an agent's conduct may be attributed to the principal for personal jurisdiction purposes."); *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 458 (10th Cir. 1996) ("[A] nonresident corporate entity creates contacts for personal jurisdiction purposes through its authorized representatives: its employees, directors, officers and agents."). Specifically, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG*, 134 S. Ct. at 759 n.13; *see also Int'l Shoe*, 326 U.S. at 318 (explaining that "the commission of some single or occasional acts of the corporate agent in a state" may sometimes "be deemed sufficient to render the corporation liable to suit" on related claims)*; Gemini Investors Inc. v. Ameripark, Inc.*, 542 F. Supp. 2d 119, 124 (D. Mass. 2008) (finding that an agent's purposeful availment may be attributed to his principals)*; Resnick v. Rowe*, 283 F. Supp. 2d 1128, 1138–39 (D. Haw. 2003) (same).

Thus, Defendants "purposefully availed" themselves if Larson "purposefully availed" himself (i.e., if Larson could reasonably have foreseen being haled into court in Kentucky for his actions). *See*, *e.g.*, *Gourdine v. Karl Storz Endoscopy-America, Inc.*, 223 F. Supp. 3d 475, 490 (D.S.C. 2016) (recognizing that an agent's purposeful availment may support the exercise of personal jurisdiction over the principal, even if the principal did not purposefully avail itself).

The Court finds that Plaintiffs have adequately alleged that Larson acted as Defendants' agent when he visited Cadiz, Kentucky.[4] Furthermore, by traveling to Kentucky to threaten litigation, Larson's action created a substantial connection with the state such that he could have foreseen the consequences of that availment. *See Calphalon Corp.*, 228 F.3d at 723 ("[The Sixth Circuit has] recognized that the threat of litigation can be a factor supporting purposeful availment." (citing *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1170 (6th Cir. 1988))). Accordingly, the Court finds that Defendants purposefully availed themselves of the privilege of acting in, or causing a consequence in, Kentucky. *See Mohasco*, 401 F.2d at 381.

The Court likewise finds that the second and third prongs of the *Mohasco* test are satisfied. As noted above, the remaining defamation claim arose from Larson's activities in Kentucky. Furthermore, Larson's activities have a direct connection with Kentucky. Once the first two *Mohasco* prongs are met, "an inference of reasonableness arises . . . and [ ] only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (internal quotations omitted). Defendants argue that "it would be a significant burden to defend this case in Kentucky based on the limited number of sales Defendants have made to a Kentucky resident." (D.N. 23-1, PageID # 365) But as explained above, Defendants' sales to Plaintiffs do not serve as the jurisdictional predicate. Defendants offer no reason why the exercise of jurisdiction over them for the claim arising out of Larson's visit to Kentucky would not be reasonable. The Court therefore finds that it may exercise jurisdiction over Defendants as to this one remaining claim.

---

[4] With this said, the Court has serious doubts as to whether Larson acted as Riley's agent in Riley's individual capacity. Indeed, in Plaintiffs' twenty-five-page response, Plaintiffs never state why the Court has personal jurisdiction over Riley in his individual capacity. Viewing the parties' submissions in the light most favorable to Plaintiffs, however, the Court concludes that Larson acted as an agent of both Riley Built and Riley in his individual capacity.

### III. Motion to Dismiss

Defendants also move to dismiss all claims pursuant to Rule 12(b)(6). Because the Court finds that it has personal jurisdiction over Defendants only as to the defamation claim arising from Larson's visit to Kentucky, the analysis will be limited to this claim.

In order to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

As Defendants note in their motion, "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). Furthermore, the Federal Circuit has "recognized that a patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).

When defamation allegations relate to patent infringement, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim."

*Globetrotter*, 362 F.3d at 1374. Thus, even if a state's defamation law does not require bad faith, a plaintiff alleging defamation in a patent context must eventually prove bad faith. *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002); *see also Card-Monroe Corp. v. Tuftco Corp.*, No. 1:14–cv–292, 2017 WL 3841878, at *48 (E.D. Tenn. Sept. 1, 2017) ("[The] state-law claims can survive preemption only if they are based on a showing of bad faith action in asserting infringement, even if bad faith is not an element of the state-law tort claim." (internal quotations omitted)); *Kingspan Insulated Panels, Inc. v. Centria, Inc.*, No. 1:15-CV-1023, 2016 WL 4136526, at *7 (W.D. Mich. Aug. 4, 2016) (finding that the plaintiff's tortious-interference claim "fail[ed] to allege a sufficient factual basis to conclude that [the defendant] acted in bad faith either because it knew that one or more of its patents was invalid or because it knew that its (implied) claim of infringement was baseless"). "Communication of accurate information about patent rights, whether by direct notice to potential infringers or by publicity release, does not support a finding of bad faith." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998). Thus, Plaintiffs must allege that Defendants' allegations of infringement were "objectively false" and made "with knowledge of their incorrectness or falsity, or disregard for either." *Golan*, 310 F.3d at 1371.

As to their defamation claim arising from Larson's visit to Kentucky, Plaintiffs have failed to plead bad faith on Defendants' part. Plaintiffs first argue that pleading bad faith is not a required element for defamation at this stage. (D.N. 24, PageID # 393) The Court disagrees. As explained, if Plaintiffs survive the motion to dismiss, they would ultimately need to prove bad faith. *Golan*, 310 F.3d at 1371. Furthermore, to state a claim upon which relief may be granted, Plaintiffs must allege facts that, if proved, would entitle them to relief. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007). In this context, bad faith is an element of Plaintiffs'

defamation claim. *See Globetrotter*, 362 F.3d at 1374 ("[B]ad faith must be *alleged* . . . even if bad faith is not otherwise an element of the tort claim." (emphasis added)).

Plaintiffs also argue that even if an allegation of bad faith is required at this stage, "they have included adequate information . . . to satisfy the issue of bad faith." (D.N. 24, PageID # 393) Yet the acts Plaintiffs cite as evidence of bad faith are unrelated to Larson's alleged defamatory statements. (*Id.*, PageID # 393–96) Indeed, in addressing the motion to dismiss pursuant to Rule 12(b)(6), Plaintiffs fail to mention Larson's statements. (*See id.*) At most, Plaintiffs argue that once they sent Defendants a letter "indicat[ing] the clear differences between [their chutes and Riley's chutes] . . . Defendants were on notice that their claims of infringement were *arguably* objectively baseless." (*Id.*, Page ID # 395) (emphasis added)) Ultimately, however, Plaintiffs have not adequately alleged bad faith. To the contrary, the complaint indicates that Defendants hired an investigator to investigate the potential infringement and a lawyer to draft a cease-and-desist letter *prior to* Larson's alleged defamatory statements, indicating that there may have been a good faith basis for Larson's statements. (D.N. 20, PageID # 330–32) In short, even when viewed in the light most favorable to Plaintiffs, the complaint does not adequately allege that Larson's statements were made in bad faith.[5]

### IV. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

---

[5] In light of this conclusion, the Court declines to address Defendants' alternate argument that Larson's statements are protected by the Noerr-Pennington doctrine. (D.N. 23-1, PageID # 370)

(1) Defendants' motion to dismiss (D.N. 23) is **GRANTED**.  The claim arising from Mark Larson's visit to Kentucky is **DISMISSED** with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  All other claims are **DISMISSED** without prejudice pursuant to Rule 12(b)(2).

(2) This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

November 21, 2017

**David J. Hale, Judge
United States District Court**